Opinion issued September 22, 2011



In The

Court of Appeals

For The

First District of Texas

————————————

NO. 01-10-00357-CR

————————————

Arick Danil Washington, Appellant

V.

The
State of Texas, Appellee



 



 

On Appeal from the 182nd District Court

Harris County, Texas



Trial Court Cause No. 121996

 



 

 

MEMORANDUM
OPINION

          Appellant Arick Danil Washington
appeals a judgment convicting him of the first-degree felony of possession of a
controlled substance with intent to deliver. 
See Tex. Health
& Safety Code Ann. § 481.112(d) (West 2010).  Washington pleaded not guilty before the
jury.  The jury found Washington guilty
and assessed his punishment at 35 years’ confinement in the institutional
division of the Texas Department of Criminal Justice.  Washington challenges the sufficiency of the
evidence to sustain his conviction. 
Concluding the evidence is sufficient, we affirm.

Background

          In April 2009, Officer I.L. Jones of
the Houston Police Department received information that men were dealing
phencyclidine (PCP) near a liquor store in northern Houston.  Specifically, the informant reported that
customers would drive up and hand over their cigarettes to the dealers, who
would dip the cigarettes into PCP.  The
dealers would return the PCP-laced cigarettes, for which most customers paid
$10.  

          On the afternoon of April 15, Officer
Jones and his partner, Officer K. Jacobs, along with a team of other officers conducted
an undercover surveillance operation of the area near the liquor store.  Officers Jones and Jacobs identified three
men whom they suspected were dealing PCP: Washington, Andre Scott, and Eric
Brown.  During the nearly two-hour
surveillance, the officers observed what they believed to be more than 10
hand-to-hand drug transactions, of which Washington carried out three or four.  During each transaction, a person would drive
up to and briefly meet with one of the suspected dealers.  After each meeting, the suspected dealer approached
a brown box located to the left of the liquor store door.  From the box, he retrieved a white styrofoam
cup, from which he would remove a brown vanilla extract bottle.  The dealer would dip a cigarette into the
bottle and return it to the customer.  Washington
and the two other men often met up and exchanged money among themselves.    

          When patrol officers drove into the
liquor store parking lot, Scott, who was holding the vanilla-extract bottle,
immediately threw the bottle back into the brown box.  As the officers approached, they smelled the
strong, characteristic odor of PCP.  Washington
was standing approximately five to seven feet away from the brown box when the
officers arrested him and the two other men. 
Officer Jones’s supervisor collected the vanilla extract bottle and gave
it to Officer Jones.  Later testing
revealed that the bottle contained 7.4 grams of PCP.  The police conducted a pat-down search of
each of the men incident to the arrests. 
On Washington they found $2,342, consisting mostly of 20-, 10-, and 5-dollar
bills.  Officer Jones asked Washington
whether he was currently employed, and Washington answered that he was not
working at that time.  Washington
explained that he had collected the money for a funeral; however, the officers
did not see any indication that the men had been fundraising.  A narcotics dog alerted to the presence of a narcotic odor on
the recovered money, but the record does not support the conclusion that the
odor detected was PCP, because the dog had not been trained to detect the odor
of PCP.  Police inventoried Washington’s
car but found no contraband.  

          At trial, Officer Jones testified that
he had worked in the Narcotics Division for approximately four years and that
he was familiar with PCP.  Officer Jones
testified based on his experience combating street-level narcotics activity
that users typically consume PCP by smoking tobacco or marijuana cigarettes
that have been dipped into PCP.  He also
testified that PCP is usually stored in a bottle because it can be absorbed
through one’s skin.  Based on his
training, he believed that Washington and the other men were engaged in
narcotics transactions because of the manner in which people approached in
their cars and met with the men.  Officer
Jacobs likewise testified, based on her training and experience as a member of
the Narcotics Division for three years, that Washington and the other men were
selling narcotics.  Specifically, she
testified that the manner in which Washington, Scott, and Brown carried out the
transactions conformed to typical PCP sales.

Sufficiency of
the Evidence

          In his sole issue on appeal, Washington
challenges the legal and factual sufficiency of the evidence to sustain his
conviction of possession of a controlled substance with intent to deliver.  Specifically, Washington argues that the
evidence is insufficient because the police officers testified that they did
not actually see the bills that were being exchanged; the police did not stop,
search, or arrest any of the suspected buyers; there was no evidence showing
the presence of PCP on the recovered money; and the police found no contraband
or other incriminating evidence in his car.

          A.      Standard of
Review

An appellate
court reviews legal
and factual sufficiency challenges using the same standard of review.  See
Griego v. State, 337 S.W.3d 902, 902
(Tex. Crim. App. 2011).  “Under this
standard, evidence is insufficient to support a conviction if considering all
record evidence in the light most favorable to the verdict, a factfinder could
not have rationally found that each essential element of the charged offense was
proven beyond a reasonable doubt.”  Gonzalez v. State, 337 S.W.3d 473, 478
(Tex. App.—Houston [1st Dist.] 2011, pet. ref’d) (citing Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)).  Evidence is insufficient under this standard in four
circumstances: (1) the record contains no evidence probative of an element of
the offense; (2) the record contains a mere “modicum” of evidence probative of
an element of the offense; (3) the evidence conclusively establishes a
reasonable doubt; and (4) the acts alleged do not constitute the criminal
offense charged.  Gonzalez, 337 S.W.3d at 479; see
Jackson, 443 U.S. at 314, 318 n.11, 320, 99 S. Ct. at 2786, 2789 &
n.11.  The sufficiency of the evidence is
measured by the elements of the offense as defined in a hypothetically correct
jury charge, which is one that accurately sets out the law, is authorized by
the indictment, does not unnecessarily increase the State’s burden of proof or
unnecessarily restrict the State’s theories of liability, and adequately
describes the particular offense for which the defendant was tried.  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  If an
appellate court finds the evidence insufficient under this standard, it must
reverse the judgment and enter an order of acquittal.  Gonzalez,
337 S.W.3d at 479.

An appellate court determines whether the necessary
inferences are reasonable based upon the combined and cumulative force of all
the evidence viewed in the light most favorable to the verdict.  Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim.
App. 2007) (quoting Hooper v. State,
214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). 
When the record supports conflicting inferences, an
appellate court presumes that the factfinder resolved the conflicts in favor of
the verdict and defers to that resolution. 
Id. (citing Jackson, 443 U.S. at 326, 99 S. Ct. at 2793).  “An appellate court likewise defers to the factfinder’s evaluation of the
credibility of the evidence and the weight to give the evidence.”  Gonzalez, 337 S.W.3d at 479.  In viewing
the record, a court treats direct and circumstantial evidence equally:
circumstantial evidence can be as probative as direct evidence, and
circumstantial evidence alone can be sufficient to establish guilt.  Clayton, 235 S.W.3d at 778 (quoting Hooper, 214 S.W.3d at 13).

 

 

          B.      Law Applicable
to Possession with Intent to Deliver   

          A person commits the offense of possession of a controlled
substance with intent to deliver if the person (1) possesses a controlled
substance, (2) knows that the substance is a controlled substance, and (3)
intends to deliver the substance.  Tex. Health
& Safety Code Ann. § 481.112(a).  A person possesses an object if he has actual
care, custody, control, or management of that object.  Id. § 481.002(38) (West 2010).  Possession need not be exclusive.  Evans
v. State, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006).  When the accused is not in exclusive possession of the place
where the controlled substance is found, then additional, independent facts and
circumstances must affirmatively link the accused to the substance in such a
way that it can reasonably be concluded that the accused possessed the
substance and had knowledge of it.  Poindexter v. State, 153 S.W.3d 402, 406
(Tex. Crim. App. 2005); Kibble v. State,
340 S.W.3d 14, 18 (Tex. App.—Houston [1st Dist.] 2010, pet. ref’d).  The following are some affirmative links that
may circumstantially establish the sufficiency of the evidence to prove knowing
possession: (1) the defendant’s presence when a search is conducted; (2)
whether the substance was in plain view; (3) the defendant’s proximity to and
the accessibility of the substance; (4) whether the defendant was under the
influence of narcotics when arrested; (5) whether the defendant possessed other
contraband or narcotics when arrested; (6) whether the defendant made
incriminating statements when arrested; (7) whether the defendant attempted to
flee; (8) whether the defendant made furtive gestures; (9) whether there was an
odor of contraband; (10) whether other contraband or drug paraphernalia were
present; (11) whether the defendant owned or had the right to possess the place
where the substance was found; (12) whether the place where the substance was
found was enclosed; (13) whether the defendant was found with a large amount of
cash; and (14) whether the conduct of the defendant indicated a consciousness
of guilt.  Evans, 202 S.W.3d at 162 n.12. 
Not all of these factors must be proved; rather, it is the cumulative
logical force the factors have in proving possession that we must
consider.  See James v. State, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st
Dist.] 2008 pet. ref’d).  Additionally,
absence of some of the factors is not evidence of innocence that must be
weighed against the factors that are present. 
Id.

          A person intends to
deliver a substance if it is his conscious objective or desire to transfer,
actually or constructively, the substance to another.  Tex.
Health & Safety Code Ann. § 481.002(8); Tex.
Pen. Code Ann. § 6.03(a) (West 2011). 
Intent to deliver can be inferred from the acts, words, and conduct of
the defendant.  See Kibble, 340 S.W.3d at
18.  Some factors to consider in
determining intent include (1) the nature of the location where the defendant
was arrested, (2) the quantity of drugs the defendant possessed, (3) the manner
of packaging of the drugs, (4) the presence or absence of drug paraphernalia,
(5) whether the defendant possessed a large amount of cash in addition to the
drugs, and (6) the defendant’s status as a drug user.  Kibble,
340 S.W.3d at 18–19 (citing Williams v.
State, 902 S.W.2d 505, 507 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d)).
 “These are evaluative factors for the
court to take into consideration when reviewing the sufficiency of the evidence
but are not each required to be present.” 
Id. at 19.  “Expert testimony may be
introduced to prove intent to deliver.”  Id. (citing Rhodes v. State, 913 S.W.2d 242, 251 (Tex. App. —Fort Worth 1995), aff’d, 945 S.W.2d 115 (Tex. Crim. App. 1997)).

          C.      Analysis

          Officers Jones and Jacobs testified
that they observed Washington repeatedly take physical possession of the bottle
containing PCP and dip cigarettes into it before returning the cigarettes to
multiple persons.  While Washington’s
physical possession of the PCP was not continuous and exclusive (i.e., Scott
and Brown also held the PCP at times), multiple links further support the
jury’s finding that Washington knowingly possessed the PCP: the bottle
containing the PCP was repeatedly brought into plain view; Washington was in
close proximity—approximately five to seven feet—to the brown box from which
the officers retrieved the bottle; the strong odor of PCP pervaded the
immediate area; the bottle was hidden inside a styrofoam cup that was in turn
hidden in a box; and Washington had a large amount of cash on him.  See
Evans, 202 S.W.3d at 162 n.12; see
also Brewer v. State, 500
S.W.2d 504, 506 (Tex. Crim. App. 1973) (where appellant took marihuana for a
brief period to “roll some smoke” but then returned marihuana to another
individual without having done so, evidence was sufficient to show possession
of marihuana); State v. Derrow, 981
S.W.2d 776, 779 (Tex. App.—Houston [1st Dist.] 1998, pet. ref’d) (evidence
sufficient to show possession where officer testified he saw appellant pass
brown paper bag containing contraband to driver of vehicle who attempted to
hide bag).  

          Likewise, there is sufficient evidence
of Washington’s intent to deliver.  Both
officers testified that they saw Washington take cigarettes from the occupants
of vehicles, dip the cigarettes into the bottle containing PCP, and return the
cigarettes.  Additionally, the jury could
have inferred Washington’s intent to deliver the PCP from several items of
evidence: the nature of the location where he was carrying out the transactions
and was arrested (namely, an area that Officer Jones testified is known for
street-level narcotics transactions); the length of time Washington spent standing
outside the liquor store; the number of transactions he conducted while under
surveillance; the amount of PCP involved; the manner in which the PCP was
packaged and stored; and the large amount of small-denomination bills in his
possession.  See Kibble, 340 S.W.3d at
18–19.  Finally, two officers with
experience in narcotics investigations testified that Washington’s conduct
during the surveillance was consistent with street-level PCP sales.  See id.
at 19 (expert testimony may be introduced to prove intent to deliver).  Viewing the evidence in the light most
favorable to the jury’s verdict, a rational juror could have found Washington
knowingly possessed the PCP with intent to deliver.  See id.

          We overrule Washington’s sole issue.

Conclusion

          We
affirm the judgment of the trial court.

 

                                                                   

 

                                                                   Rebeca
Huddle

                                                                   Justice

 

Panel consists of Chief
Justice Radack and Justices Bland and Huddle.

 

Do not publish.  Tex.
R. App. P. 47.2(b).