*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*





# MEMORANDUM OPINION

No. 04-10-00741-CR

Victor Manuel **ACOSTA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 9, Bexar County, Texas
Trial Court No. 312110
Honorable Laura Salinas, Judge Presiding

Opinion by:     Rebecca Simmons, Justice

Sitting:          Rebecca Simmons, Justice
                 Steven C. Hilbig, Justice
                 Marialyn Barnard, Justice

Delivered and Filed:  August 31, 2011

REVERSED AND REMANDED

Victor Manuel Acosta was charged with possession of brass knuckles, a prohibited weapon. Acosta filed a motion to suppress, alleging that the police obtained the evidence during an illegal investigative detention. After a hearing, the trial court denied Acosta's motion, and Acosta entered a plea of guilty pursuant to a plea bargain. Acosta appeals the denial of his motion. We reverse the trial court's order and remand the case for further proceedings.

## BACKGROUND

On December 16, 2009, a complainant called the San Antonio Police Department to report a hit-and-run incident on Sunkist Road. A dispatcher contacted Officer Kristie Diaz, who was in the area, and informed her that the complainant's car was struck by "a silver sedan" that the complainant was following. Officer Diaz testified that she drove toward Sunkist and observed Acosta's four-door, silver car turn from Sunkist onto Callaghan Road approximately one mile from the incident.[1] Officer Diaz then stopped Acosta.

After Acosta told Officer Diaz that he did not have a driver's license, she returned to her patrol car to run Acosta's information. Within about two minutes, San Antonio Police Officers Javier Perales, Jr. and Daniel Lopez drove up to the scene. Officer Perales approached Acosta's vehicle and saw several pills in the passenger door compartment. Believing that Acosta was in possession of a dangerous drug, Officer Perales removed Acosta from the vehicle and handcuffed him. Officer Diaz returned to Acosta's car and saw brass knuckles protruding from underneath the driver's seat. Sometime after Officers Perales and Lopez arrived, Officer Diaz was notified that Acosta was not the hit-and-run driver. Acosta thereafter was charged with possession of a prohibited weapon.

## MOTION TO SUPPRESS

Acosta argues that the trial court abused its discretion by denying his motion to suppress because Officer Diaz lacked reasonable suspicion to justify the stop. The State responds that Officer Diaz had reasonable suspicion due to Officer Diaz's proximity to the hit-and-run incident and because Acosta's car matched the complainant's description.

---

[1] We note that Sunkist and Callaghan do not intersect, but Sunkist intersects with Mira Vista, which turns into Seacroft Street before intersecting with Callaghan. *See Griego v. State*, 331 S.W.3d 815, 820 (Tex. App.—Amarillo) (noting that appellate courts may take judicial notice of location of streets and other geographical facts), *vacated on other grounds*, 337 S.W.3d 902 (Tex. Crim. App. 2011).

## A. Standard of Review

We review a trial court's ruling on a motion to suppress for an abuse of discretion and will reverse only if the trial court's ruling "is outside the zone of reasonable disagreement." *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006); *see also Arizpe v. State*, 308 S.W.3d 89, 91 (Tex. App.—San Antonio 2010, no pet.). We apply a bifurcated standard of review, giving almost total deference to a trial court's determination of historical facts and mixed questions of law and fact that rely upon the credibility of a witness, but we review de novo pure questions of law and mixed questions that do not depend on credibility determinations. *Guzman v. State*, 955 S.W.2d 85, 87–89 (Tex. Crim. App. 1997); *Martinez v. State*, 275 S.W.3d 29, 34 (Tex. App.—San Antonio 2008, pet. struck). We review issues of reasonable suspicion de novo. *See Guzman*, 955 S.W.2d at 87–88.

## B. Applicable Law

To be justified in detaining a motorist, a police officer must have reasonable suspicion based upon specific and articulable facts that the motorist has engaged in or is about to engage in criminal activity. *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005). These facts must amount to more than a mere suspicion or hunch, but need not be based upon an officer's personal observations. *Id.* at 258–59; *Arizpe*, 308 S.W.3d at 91–92. "The determination of reasonable suspicion is dependent upon both the content of the information known to the officer and its degree of reliability. . . . Those facts must show unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to crime." *Martinez v. State*, Nos. PD-1238-10, PD-1239-10, 2011 WL 2555712, at *2 (Tex. Crim. App. June 29, 2011) (citing *Alabama v. White*, 496 U.S. 325, 330 (1990)). This determination is made by objectively considering the totality of the circumstances. *White*, 496

U.S. at 330; *Ford v. State*, 158 S.W.3d 488, 492–93 (Tex. Crim. App. 2005). "Totality of the circumstances" includes both the quantity and quality of information. *White*, 496 U.S. at 330; *Arizpe*, 308 S.W.3d at 92.

"An anonymous tip usually will justify the *initiation* of a police investigation." *State v. Simmang*, 945 S.W.2d 219, 223 (Tex. App.—San Antonio 1997, no writ). However, a tip by an unnamed informant "rarely will establish the requisite level of reasonable suspicion necessary to justify an investigative detention." *State v. Griffey*, 241 S.W.3d 700, 704 (Tex. App.—Austin 2007, pet. ref'd); *see also Florida v. J.L.*, 529 U.S. 266, 269–70 (2000). There must be some further indicia of reliability, some additional facts from which a police officer may reasonably conclude that the tip is reliable and a detention is justified. *J.L.*, 529 U.S. at 270; *State v. Fudge*, 42 S.W.3d 226, 230 (Tex. App.—Austin 2001, no pet.). An anonymous tip that a police officer corroborates can exhibit "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." *J.L.*, 529 U.S. at 270.

## C. Analysis

### 1. Reliability of the Anonymous Informant

Because the record does not disclose the identity of the complainant or support that the complainant ever revealed her identity to the dispatcher or police officers, we must consider the complainant an anonymous informant. *See J.L.*, 529 U.S. at 270; *Mitchell v. State*, 187 S.W.3d 113, 117 (Tex. App.—Waco 2006, pet. ref'd). Although an anonymous tip will rarely be sufficient to support reasonable suspicion, a citizen-informant's tip may be reliable when considering certain factors: "(1) whether the informant provides a detailed description of the wrongdoing; (2) whether the informant observed the wrongdoing firsthand; (3) whether the informant is somehow connected with the police (e.g., a paid informant); and (4) whether the

informant places himself in a position to be held accountable for the report." *Arizpe*, 308 S.W.3d at 92.

The record supports the second factor only. The complainant reported that a silver sedan hit her vehicle and drove off. The record, however, is devoid of any evidence that the complainant gave a detailed description of the wrongdoing or the perpetrator to the dispatcher and ultimately to the officer. Moreover, the record does not reveal the identity of the complainant, and there was no testimony that the complainant made any face-to-face contact with any police officer. Thus, the record does not support that the anonymous information had a high degree of reliability. *See id.*

### 2. *Specific and Articulable Facts Linking Acosta to Criminal Activity*

Having determined that the complainant's tip lacked a high degree of reliability, we next turn to whether Officer Diaz had specific and articulable facts connecting Acosta to criminal activity. *See Martinez*, 2011 WL 2555712, at \*4 (holding that stopping a vehicle that resembles the description of a vehicle reportedly involved in certain criminal activity is insufficient absent corroboration that the stopped vehicle was involved in the reported or other criminal activity). If a police officer is unable to testify to specific and articulable facts, "the detention cannot be 'subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular . . . seizure in light of the particular circumstances.'" *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). Such facts are distinct from a police officer's opinions. *See id.* (holding that an officer's testimony that a driver appeared to be "following too closely," without specific facts supporting that conclusion, was a mere opinion that did not support reasonable suspicion).

Other than the possible hit and run, Officer Diaz was unable to connect Acosta to any other criminal activity prior to pulling over his vehicle. However, Officer Diaz had little information connecting Acosta to the hit and run other than that he was driving a similarly colored sedan. Although Officer Diaz testified that Acosta's car was a silver sedan that was near Sunkist Road, she did not see any damage to Acosta's car indicating that he was in an accident. Officer Diaz also admitted that the complainant was not following Acosta, contrary to what the dispatcher had reported. Officer Diaz never testified to any specific facts regarding the location of the hit-and-run incident, her location when she was dispatched, or exactly how long it took to find and stop Acosta. The sole basis for the stop was the silver color of the car and that it was located near the incident. Without more, Officer Diaz lacked sufficient specific and articulable facts to give her reasonable suspicion to stop Acosta. *See Martinez*, 2011 WL 2555712, at *4.

## CONCLUSION

Because the complainant's anonymous tip lacked reliability, and because Officer Diaz lacked specific and articulable facts that would lead her to reasonably believe that Acosta was the hit-and-run driver or had committed any other crime, Officer Diaz lacked reasonable suspicion to stop Acosta. We, therefore, reverse the trial court's order and remand the case for further proceedings consistent with this opinion.

Rebecca Simmons, Justice

DO NOT PUBLISH